IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RENAL NELSON,

    Petitioner,

  v.

A.P. KANE, Warden,

    Respondent.
    _____/

No. C 05-4419 CW (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

    Petitioner Renal Nelson, a state prisoner, has filed a pro se petition for a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings (Board).[1]  Respondent Anthony Kane has filed an answer.  Petitioner has filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

    On January 10, 1988, Petitioner beat and strangled to death thirty-year old Joseph Lackey.  Resp't Ex. 3, Probation Officer's Report, at 2.  Witnesses told police officers that Lackey, a homeless man in the area, was intoxicated, and, during the beating,

---

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings.  Cal. Penal Code § 5075(a).

continually pled with Petitioner to "let [him] rest." Id.; Resp't Ex. 2, Record of Parole Hearing, at 17. Although the motive for the attack is not clear, a police report suggests that Petitioner may have been arguing with the victim over a bottle of wine. Resp't Ex. 3 at 2. A detective of the Long Beach Police Department who investigated the crime discovered that Petitioner "had a reputation on the street as the kind of person who was always strong-arming old, homeless winos," and strongly suspected that he robbed the victim after the beating. Id. at 5.

In 1988, a Los Angeles County jury convicted Petitioner of second degree murder, and he was sentenced to a term of fifteen years to life in state prison, plus five years for a prior offense. Resp't Ex. 1, Sentencing Judgment, at 1. During his time in prison, Petitioner has committed a few minor disciplinary violations, including two CDC 128-A's, one for delaying lock-up and one for failing to report to a job assignment, and one CDC-115 for "attempting to manipulate staff with gifts and gratuities." Resp't Ex. 4 at 3. The last disciplinary action taken against Petitioner was in 1994. Id.

Petitioner has attended several vocational courses while in prison, including machine shop, appliance repair and dry cleaning. Id. at 11. His most recent work assignments were in lunch box duty, where his work reports indicated an above-average performance, and dry cleaning, where his progress has been deemed satisfactory. Id. He attended an educational culinary program, as well as a literacy program, and is making efforts to achieve his General Education Diploma (GED). Id. at 3. Finally, Petitioner has been a faithful member of Alcoholics Anonymous (AA) since 1992.

2

Id. at 3.

On August 26, 2003, Petitioner attended his second parole suitability hearing before the Board. Resp't Ex. 2 at 1. In evaluating his suitability, the Board considered the facts of the commitment offense, Petitioner's criminal record, his personal history and various post-conviction factors, such as his work reports, counselor reports and psychiatric evaluations. Id. at 9-12.

The Board obtained its information regarding the commitment offense from the trial court's findings. At Petitioner's previous parole hearing in February of 2000, he had denied committing the murder or even being present at the time of the offense. Id. at 9. At the instant hearing, Petitioner chose not to discuss the commitment offense with the Board. Id. at 8.

The Board also incorporated evidence of Petitioner's criminal record prior to the commitment offense. Id. at 10. Although Petitioner has no juvenile record, his adult criminal record includes a 1976 petty theft conviction, a 1980 burglary conviction, a 1981 vandalism conviction, a 1982 attempted grand theft conviction, a 1984 trespassing conviction and a 1985 burglary conviction. Resp't Ex. 4, Life Prisoner Evaluation Report, at 10. As a result of these convictions, Petitioner had served time in both county jail and state prison. Id. At the time of the commitment offense, Petitioner was on parole. Resp't Ex. 2 at 22.

The post-conviction factors which the Board considered included counselor and psychiatric reports diagnosing Petitioner as being in full institutional remission for alcohol abuse. Resp't Ex. 4 at 4. With a Global Assessment of Function (GAF) Score of

3

85, Petitioner had a below average dangerousness rating relative to the average Level II inmate, and was deemed no more dangerous than the average citizen if released on parole.  Resp't Ex. 2 at 18.

The Board also considered the testimony of a number of interested parties.  Id. at 13-17.  A letter from Petitioner's sister indicated that she would provide Petitioner with a place to live and financial and emotional support after his release.  Id. at 14.  The Board also received a letter of support from Petitioner's brother.  Id.  Petitioner provided evidence of a standing offer of employment at a landscaping lighting company in Orange County.  Id. at 13.  He also promised the Board that, if released, he would continue to attend AA meetings, find a community sponsor, and "never touch alcohol again."  Id. at 15.

Finally, the Board considered oppositions to Petitioner's release sent by the Los Angeles District Attorney's Office and the City of Long Beach Police Department.  Id. at 16-17.  The District Attorney suggested that parole be denied because of the "terrible and brutal nature of how the victim was killed."  Id. at 17.

After deliberation, the Board concluded that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released.  Id. at 21.  The Board issued a two-year denial of parole.  Id.  In support of its decision, the Board cited as the "paramount reason" the "especially vicious and brutal manner" with which the commitment offense was carried out.  Id.  The Board emphasized that the victim was very intoxicated at the time of the offense, and therefore could not defend himself against being "severely beaten and

4

strangled." Id. at 22. Moreover, the Board found that the motive for the crime was "inexplicable and very trivial in relationship to the offense." Id.

The Board also found that Petitioner's lengthy adult criminal record prior to the commitment offense supported its finding that Petitioner "has an escalating pattern of criminal behavior." Id. The Board reasoned that Petitioner's failure to respond to "society's previous attempts to correct his criminality," indicated a higher likelihood that he would recidivate if released on parole before being fully rehabilitated. Id.

Although the Board found Petitioner's psychological report and parole plans "adequate," and commended him for his positive work reports, demonstrated commitment to AA and discipline-free record, it held that he had "not sufficiently participated in beneficial self-help and therapy programming," including educational programs that would allow him to finish his GED. Id. at 23-24. Given Petitioner's "history of unstable tumultuous relationships" and "problems of substance abuse with alcohol," the Board found that it needed "a longer period of observation and evaluation . . . before [it could] find that he's suitable for parole." Id. at 25.

On December 28, 2004, sixteen months after the parole hearing, Petitioner filed a petition for a writ of habeas corpus with the Los Angeles County superior court challenging the Board's decision and asserting that the denial of parole violated his due process rights. On April 12, 2005, the superior court denied his petition, based on two procedural grounds: 1) that Petitioner's claims were barred as untimely under California law, and 2) that Petitioner

5

"failed to meet his burden of proving the factual allegations that serve as the basis for the petition," because he did not submit documents regarding his commitment offense and social factors that were incorporated into the Board's review, but were listed as "inaudibles" in the hearing's transcripts. On July 18, 2005, the California court of appeal summarily denied his petition for review, and on October 12, 2005, the California Supreme Court summarily denied his petition. Petitioner filed for federal habeas relief in this Court on October 21, 2005.

On May 22, 2005, Respondent filed a motion to dismiss based on three separate grounds, which the Court denied on March 26, 2007 (March 26, 2007 Order). Respondent's first ground for dismissal, that Petitioner had procedurally defaulted due to his failure to timely file his state habeas petition, was denied on the ground that Respondent failed to meet his burden of demonstrating that California's timeliness bar was an adequate state ground for rejecting Petitioner's claims. Respondent's second procedural claim, that Petitioner failed to exhaust his state judicial remedies, was denied on the ground that Petitioner's claims were exhausted because they were procedurally barred in state court. Finally, the Court rejected Respondent's substantive claim that California statutory law does not create a federally protected liberty interest in parole release.

DISCUSSION

I. Re-submission of Respondent's Motion to Dismiss

In his answer, Respondent renews the three grounds for

6

dismissal that the Court addressed and denied in its March 26, 2007 Order. The Court construes these parts of Respondent's answer as a motion for reconsideration of that Order.

Parties to an action may not relitigate issues previously decided in a case absent a compelling reason for reconsideration. Pursuant to Civil Local Rule 7-9, a party may file a motion for reconsideration only after requesting leave to do so from the Court. Civil L.R. 7-9(a). Reconsideration should be granted only where there has been an intervening change of law or fact, new evidence or authority not previously available in the exercise of reasonable diligence has been discovered, or reconsideration is necessary to correct a clear error of law or a manifest injustice. School Dist. No. 1J, Multnomah Co. v. ACandS Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); Civil L.R. 7-9(b).

With regard to his exhaustion and due process arguments, Respondent does not allege that the Court's March 26, 2007 Order was clearly erroneous, that intervening controlling authority necessitates a different result, that circumstances or facts in this action have changed, or that manifest injustice would result absent reconsideration. Thus, Respondent's request for leave to file a motion for reconsideration of these issues is denied.

Respondent does, however, allege that Ninth Circuit law issued after he filed his motion to dismiss necessitates the Court's reconsideration of whether Petitioner procedurally defaulted due to his failure to file his state habeas petition on time. Respondent cites Gaston v. Palmer, 447 F.3d 1165, 1167 (9th Cir. 2006), a case addressing California's untimeliness rule, which was decided

after Respondent filed his motion to dismiss. Because Respondent satisfies one of the requirements for reconsideration, the Court grants leave for reconsideration of this ground for dismissal.

## II. Procedural Default Bar

The procedural default doctrine forecloses federal review of a state prisoner's habeas claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Before following the procedural default doctrine, a federal court must determine that the state court explicitly invoked a state procedural bar as an independent basis for its decision. Id. at 729. To be adequate, the state procedural bar must be clear, consistently applied and well-established at the time of the petitioner's purported default. Id.; Calderon v. United States Dist. Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996).

When a state procedural bar is applied by a state court and relief is summarily denied by the state's higher court, a federal court must consider the lower court's use of the procedural bar to determine whether it is independent and adequate. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)("where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

Here, the superior court rejected Petitioner's claims, in part because they were filed in state court sixteen months after his parole hearing and Petitioner presented no "good cause" for his delay, and in part because Petitioner failed to submit documents

8

missing from the record. <u>In re Nelson</u>, No. BH003098 (Cal. Super. Ct. 1, 2 (2005)). Because the state appellate and supreme court summarily denied relief, the Court reviews the superior court decision. See <u>Ylst</u>, 501 U.S. at 803. The state court's rejection of Petitioner's claims on procedural grounds requires the Court to determine whether California's procedural bar against the untimely presentation of claims in a habeas corpus petition constitutes a federal procedural bar. To make this determination, the Court considers whether the bar is independent and adequate.

In the Court's March 26, 2007 Order denying Respondent's motion to dismiss, it concluded that, in the present case, the procedural bar of untimeliness was an independent state ground for the superior court's decision. March 26, 2007 Order at 6. However, the Court held that Respondent "has not satisfactorily established that California's untimeliness rule pertaining to petitions challenging parole denials, after exhausting agency appeals, was an adequate state ground for rejection of Petitioner's state habeas petition." <u>Id.</u> at 9. Finding that the burden of establishing adequacy shifted to Respondent after Petitioner raised the issue of agency exhaustion, the Court denied dismissal unless Respondent could present more cases "exemplifying lengths of delay in filing habeas attacks on parole denials that have been consistently found acceptable and unacceptable, taking into account exhaustion of agency appeals." <u>Id.</u> at 8-9.

In his answer to the petition, Respondent cites <u>Gaston</u>, 447 F.3d at 1167, which found that a prisoner was not "entitled to 'gap' tolling for the delays [between state habeas applications] of

9

15 months, 18 months, and 10 months." <u>Gaston</u>, however, is distinguishable from the instant case because there, the delays between the petitioner's habeas applications were allegedly due to his having a mental disability and multiple sclerosis, and not because of agency exhaustion.  Therefore, Respondent still has not met his burden of establishing the adequacy of the State's untimeliness rule, and Petitioner's petition is not procedurally barred from federal court review.

III. Due Process Claim

Petitioner asserts that his due process rights were violated by the Board's decision to find him unsuitable for parole because that decision was not supported by "sufficient evidence having an indicia of reliability."

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>McQuillion v. Duncan</u>, 306 F.3d 895, 901 (9th Cir. 2002).  Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A federal court must presume the correctness of the state

10

court's factual findings. 28 U.S.C. § 2254(e)(1). However, when it is clear that a claim was not adjudicated on the merits in state court, for instance because the state court invoked a procedural rule that is not a bar to considering the claim in the federal habeas proceeding, the claim is subject to de novo review. Pirtle v. Morgan, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (finding that when a state court does not reach the merits of a claim, "there is no state court decision . . . to which to accord deference," and the federal court may conduct de novo review without raising "concerns about comity and federalism.").

Because California prisoners have a constitutionally protected liberty interest in being released on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process. See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion, 306 F.3d at 902. A parole Board's decision must be supported by "some evidence" to satisfy the requirements of due process. Superintendent v. Hill, 472 U.S. 445, 455 (1985); McQuillion, 306 F.3d at 904; Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). In addition, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).

A relevant factor in determining whether the evidence underlying the Board's decision has some indicia of reliability is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the Board. Pedro v. Oregon Parole Bd.,

11

825 F.2d 1396, 1399 (9th Cir. 1987). When applying these standards, the court may look to whether a prisoner's allegations of any violations by the Board are of a "minor" nature, whether they are supported in fact, whether the prisoner had an opportunity to participate, and whether he took full advantage of that opportunity. Morales, 16 F.3d at 1005.

In the instant case, the Los Angeles County superior court denied Petitioner's habeas petition on procedural grounds and thus never reached the merits of his claim. The Court must now review the record de novo and decide whether the Board's parole denial constituted a violation of Petitioner's federal due process rights. To do so, the Court must consider whether the Board's decision was supported by "some evidence," and whether this evidence has "some indicia of reliability."

In denying Petitioner's request for parole, the Board first cited as evidence the "vicious and brutal" nature of the commitment offense. Resp't Ex. 2 at 21. The Board found the murder "dispassionate and calculated," relying on evidence that the victim was an intoxicated homeless man, who pleaded with his attacker to leave him alone. Id. The Board also cited as evidence Petitioner's "escalating pattern of criminal behavior," "unstable social history" and need for more "self-help and therapy in order to face, discuss, understand and cope with stress in a nondestructive manner." Id. at 22. Finally, the Board cited the oppositions of the Los Angeles District Attorney and the City of Long Beach Police Department. Id. at 23.

Petitioner first argues that the Board's decision violated his

12

due process rights because it did not comply with California law, which mandates that the Board "*shall* set a [parole] release date *unless* it determines that the gravity of the current convicted offense . . . is such that consideration of the public safety requires a more lengthy period of incarceration." California Penal Code § 3041(b) (emphasis added). Petitioner argues that his commitment offense was not sufficiently egregious to qualify under this exception. Citing a number of California cases, Petitioner argues that this exception to parole suitability should only cover offenses carried out "in an especially heinous, atrocious, or cruel manner." In re Ramirez, 94 Cal. App. 4th 549, 569-70; In re Earnest Smith, 114 Cal. App. 4th 343, 366-367 (quoting Cal. Code Regs. tit. 15, § 2402(c)).

The Penal Code lists a number of factors that make an offense "heinous, atrocious or cruel," including factors relied upon by the Board in the instant case, such as the fact that "the offense was carried out in a dispassionate and calculated manner, "the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and "the motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs. tit. 15, § 2402(c)(1).

The evidence incorporated by the Board regarding the commitment offense is sufficient to demonstrate both that "the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," because the victim was helpless and begged for his attacker to let him rest, and that "the motive for the crime is inexplicable or very

13

trivial," because some evidence suggests that the fight broke out over a bottle of wine. Petitioner has not submitted any evidence contradicting these findings. Thus, the Court finds that the Board's use of the commitment offense exception in this case did not violate Petitioner's federal due process rights.

Petitioner also argues that the Board's overuse of the commitment offense exception establishes that the Board had a predisposition to deny his parole regardless of the facts of his case. Petitioner contends that the Board denies parole to over ninety-seven percent of inmates based at least in part on the gravity of the crime. Although it may be logical to deduce that the current parole denial rates evidence the Board's predisposition to deny parole, Petitioner has not proven that this alleged predisposition played any role in the Board's decision in his case.

Finally, Petitioner argues, under the reasoning of <u>Biggs v. Terhune</u>, 334 F.3d 910, 915-16 (9th Cir. 2003), that the Board's decision to deny parole based on a static commitment offense was improper in light of his stellar post-conviction record. In <u>Biggs</u>, the Ninth Circuit found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements, and that the "some evidence" standard could be satisfied by the Board's consideration of the gravity of the offense. However, in <u>dicta</u>, the <u>Biggs</u> court explained that courts may also consider the parole Board's decision-making process over time: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . .

14

A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17.

In Petitioner's case, however, the Board relied on more than the single "unchanging factor" of Petitioner's commitment offense in denying his parole.  Although the "vicious and brutal" nature of Petitioner's commitment offense weighed heavily in the Board's determination, his "escalating pattern of criminal behavior" and need for more education and therapy are together sufficient evidence to suggest that Petitioner would present a threat to public safety upon his release.  Resp't Ex. 2 at 21-22.  Petitioner points to the "overwhelming . . . psychological evidence" that found him no more dangerous to society than the average citizen. However, this does not overcome the fact that the Board cited "some evidence" that Petitioner would be a danger to public safety if released.

The Ninth Circuit's evolving guidance in Biggs, Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006), and Irons v. Carey, 506 F.3d 846, 854 (9th Cir. 2007), suggests that the Board can continue to evaluate static factors, such as the nature of the commitment offense, pre-conviction criminality and prior social factors, as "some evidence" in deciding whether to grant parole.  However, the weight to be attributed to those immutable events should decrease as a predictor of future dangerousness as the years pass and the prisoner

15

demonstrates favorable behavior. Biggs, 334 F.3d at 916-17; Irons, 506 F.3d at 956. As noted in Irons, 506 F.3d at 853, however, the Ninth Circuit has never found that the Board's continued reliance on a petitioner's commitment offense constitutes a due process violation if the petitioner has yet to serve his minimum sentence.

This was only Petitioner's second parole hearing. Resp't Ex. 2 at 1. At the time of the hearing, Petitioner had served approximately fifteen years of his twenty years to life sentence. Id. Should Petitioner continue to follow the Board's advice by attending self-help programming and maintaining a positive disciplinary record, continued parole denials based on static factors alone may eventually give rise to a due process violation. See Biggs, 334 F.3d at 916-17.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. Petitioner is advised timely to file any state court habeas petitions after any future parole denials, and to include any documents required by the state court, so that any future federal petition will be exhausted. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 7/15/08

_____
CLAUDIA WILKEN
United States District Judge

16

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

NELSON,
        Plaintiff,

v.

KANE et al,
        Defendant.

Case Number: CV05-04419 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 15, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jessica N. Blonien
Attorney General's Office
for the State of California
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

Renal Nelson D25895
CSP-Solano
23-A-4u
P.O. Box 4000
2100 Peabody Rd.
Vacaville, CA 95696-4000

Dated: July 15, 2008

                Richard W. Wieking, Clerk
                By: Sheilah Cahill, Deputy Clerk

17